OPINION
On Saturday April 11, 1998, Stacey Clevenstine went to Scores Sports Bar in Mansfield with her friend, Dawn Hutchinson. Dawn was having problems with her husband, and wanted to get out of the house for awhile. While at Scores, Dawn and Stacey had a few drinks and talked with friends. Stacey did not dance, as she was concerned with her appearance. Stacey spent most of the evening talking with people in the bar. Both Dawn and Stacey had a few alcoholic beverages. While Stacey was talking to a man in the bar, appellant Rocky Williams arrived. Appellant and Stacey had lived together as boyfriend and girlfriend for approximately 13 years, and had two children together. Dawn saw appellant stampeding toward the stairs which led to the dance floor. She looked at Stacey and said, "Stacey, you are screwed-Rocky Williams is here." Appellant grabbed Stacey by the throat, and held her up against a brick wall. He choked her until her body went limp, and let her go. Appellant's companion pulled him away from Stacey, and the two men were escorted from the bar. After the assault, Stacey was crying and hysterical. Her neck was visibly red and swollen. She kept repeating, "I can't go home, he's going to kill me." When the police arrived, Stacey gave a statement to the police identifying appellant as the man who attacked her in the bar. After taking a statement from Stacey and the other witnesses in the bar, the police allowed her to drive home. Appellant was charged with one count of domestic violence, with a specification of a prior conviction of domestic violence. The case proceeded to jury trial in the Richland County Common Pleas Court. At trial, Stacey testified that she was intoxicated on the night in question, as she drank 8 or 9 whiskey sours. She testified that she had been dancing with a "great big, big, big dude," and she bent down to fix her clogs. She felt a hand around her neck, and did not know who it was. She remembers Dawn telling her that she got appellant off of her, but did not remember telling the police that appellant had assaulted her. She testified that she had no memory of the identity of the person who assaulted her. Appellant testified that he was asleep at her sister's house when the attack took place. Appellant was convicted as charged, and sentenced to ten months incarceration. He assigns a single error on appeal:
 ASSIGNMENT OF ERROR THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THERE IS NO SUBSTANTIAL EVIDENCE UPON WHICH A TRIER OF FACT COULD REASONABLY CONCLUDE THAT THE ELEMENTS OF THE OFFENSES HAD BEEN PROVEN BEYOND A REASONABLE DOUBT.
Appellant argues the judgment of the conviction is against the manifest weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Weight is not a question of mathematics, but depends on its effect in inducing belief. Id. When a Court of Appeals reverses the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the Appellate Court sits as a thirteenth juror, and disagrees with the fact-finder's resolution of the conflicting testimony. Id. This court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. Discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. Id. Appellant specifically argues that the identification of appellant as Stacey's attacker is unreliable. He argues that the witnesses in the bar had only a brief opportunity to observe appellant, more than five months before trial. He argues that as he was the only black male in the courtroom, the witnesses would naturally identify him. He argues that Dawn Hutchinson had a motive to testify against appellant, as she was holding a grudge against Stacey and appellant, due to a car deal that fell through. He argues that the victim did not see her assailant, and she was extremely intoxicated on the night in question. There was abundant evidence to support the identification of appellant as the attacker. Annette Saxon, who had worked with Dawn at the Dollar Tree Store, testified that she talked to Stacey and Dawn in the bar. Although she did not see the altercation, she testified that Stacey later said that appellant had assaulted her. Tr. 131. She testified that Stacey kept repeating that she could not go home, as he would kill her. Tr. 129. Virgil "Stosh" Popa, a security guard at the bar, witnessed the altercation between appellant and Stacey. He testified that he had seen both appellant and Stacey before, although he did not know their names. Tr. 145. He identified appellant as the man he saw choking Stacey, and specifically noted that the attacker had a facial scar, as did appellant. Tr. 146, 154. Dawn Hutchinson testified that she attempted to get Stacey out of appellant's path, but appellant grabbed Stacey, held her up against the wall by her throat, and choked her. The evidence concerning a broken car deal between Dawn and Stacey was rather sketchy, and did not demonstrate a motive for Dawn to testify against appellant. Chris Davis, an off-duty security officer who was in the bar at the time, testified that he heard Dawn screaming, "Rocky, let her go" He testified that he helped restrain appellant, and escorted him out of the bar. Mansfield Police Officers Joseph Petrycki, Gust Fronz, and Robert Scropits all testified that while Stacey might have been drinking, she was not intoxicated. Officer Petrycki testified that her speech was coherent, she was steady on her feet, and her eyes did not appear glassy or bloodshot. Tr. 216. Officer Scropits testified that he would not have allowed her to drive away from the scene if she appeared to be too impaired to operate a vehicle. Tr. 243. In addition, when Officer Petrycki took a statement from Stacey, she identified appellant as the person who assaulted her. Tr. 213. Officer Fronz said that when he spoke with Stacey, she was crying and upset, and said, "Rocky went off on me." Tr. 227.
The judgment is not against the manifest weight of the evidence. The assignment of error is overruled.
The judgment of the Richland County Common Pleas Court is affirmed.
By Gwin, J., Wise, P.J., and Edwards J., concur